IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

**MELINDA CARR**
1355 Virginia Ave
Johnstown, PA 15906      **JURY TRIAL DEMANDED**

    Plaintiff,

v.      CASE NO.    3:23-cv-304

**WALNUT MANAGEMENT CORPORATION**
**d/b/a WALNUT MEDICAL SERVICES**
266 Main Street
Johnstown, PA 15901

    Defendant

---

## CIVIL ACTION COMPLAINT

AND NOW Plaintiff, Melinda Carr, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to the Americans with Disabilities Act, and applicable state laws have been violated and in support alleges the following:

## CIVIL ACTION COMPLAINT

**I. Parties and Reasons for Jurisdiction.**

1. Plaintiff, Melinda Carr, (hereinafter "Plaintiff" or "Ms. Carr") is an adult individual residing at the above address.

2. Defendant, Walnut Management Corporation d/b/a Walnut Medical Services. (hereinafter "Defendant" or "Walnut Medical Services") is a corporation organized and existing under the laws of Pennsylvania, with a principle place of business at the above address.

3. This action is instituted pursuant to the Americans with Disabilities Act, and applicable state law.

4. This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

5. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims in this Judicial District.

6. Plaintiff exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act. (See Exhibit "A," a true and correct copy of the Dismissal and Notice of Rights to Sue issued by the EEOC).

**II. Operative Facts.**

7. Around September 8, 2022, Walnut Medical Services hired Ms. Carr to the position of sales representative at the "Richland Branch." Walnut Medical Services is a medical equipment and supplies business.

8. All events alleged herein occurred at Walnut Medical Services' business location at 1236 Scalp Ave., Suite 1, Johnstown, PA 15904.

9. Ms. Carr was and is an African American adult female. Ms. Carr's supervisor, Bonnie Miller (hereafter "Miller") was and is a Caucasian adult female. At all times material, Miller held supervisory authority over Ms. Carr with respect to her employment and was authorized to take tangible employment action against Ms. Carr.

10. Ms. Carr was born and raised in Pittsburgh, PA but had lived in Johnstown, PA for the last 20 years. Almost immediately after her hire, Ms. Carr noticed that Miller was

unusually nosy and prying about Ms. Carr's past life in Pittsburgh before she moved to Johnstown, PA.

11. Miller's conduct and comments gave Ms. Carr the impression Miller had never interacted with a Black person before. On a near-daily basis, Miller started criticizing the way Ms. Carr spoke in front of customers in a way that was clearly intended to humiliate Ms. Carr.

12. At all times material, Ms. Carr's accent, grammar, and vocabulary were a reflection of her upbringing in an African-American urban community. At all times material, Miller's comments were directed to not what Ms. Carr said, but how she said it.

13. Miller always made it a point to correct Ms. Carr in front of customers in a way that made it seem like Miller was apologizing to the customer because Ms. Carr spoke like a Black person.

14. In addition to humiliating Ms. Carr in front of customers, Miller also made discriminatory comments about Ms. Carr's hair styles and the fact that Ms. Carr frequently changed her hairstyle between a natural "afro" style and wearing weaves with various lengths and braids.

15. If Ms. Carr changed her hairstyle by wearing a weave with long braids one day, Miller would ask Ms. Carr "how did you do that?" as if Ms. Carr's hair magically grew 12 inches overnight. If Ms. Carr wore her natural hair, Miller would ask, "What is this? – I thought your hair was longer." At first, Ms. Carr initially figured that Miller's comments were a product of ignorance.

16. After a few weeks of Miller making comments about Ms. Carr's hair every day, it became clear Miller's actions were intentional and not a product of ignorance. Ms. Carr mustered the courage to confront Miller – her supervisor in a new job – and told her, "All you need to

know is I am Black, and I wear my hair differently." Miller did not take the hint, and continued to humiliate Ms. Carr by making comments about the way she spoke and wore her hair.

17. Around December 20, 2022, Ms. Carr was working with her Caucasian co-worker, Joleen, while Miller was on vacation. A customer came in looking to purchase a specialized medical lift chair that Ms. Carr had never sold before and did not feel fully comfortable handling by herself. Ms. Carr asked Joleen to handle helping the customer. Instead of helping, Joleen became irate about Ms. Carr asking her to handle the sale and was extremely rude in front of the customer, which led to the customer leaving without making a purchase.

18. Fearing that she would be unfairly blamed, Ms. Carr immediately texted Miller about the incident and explained that Joleen was very angry, and it had scared the customer. At some point after Ms. Carr notified Miller about the incident, a woman called the store asking to speak with the manager because "the woman yesterday was extremely rude to [her] father" when he came in to purchase a lift chair. Ms. Carr forwarded the call to Miller.

19. Shortly thereafter, Miller emailed Ms. Carr only and essentially blamed Ms. Carr for losing the sale and told Ms. Carr the customer complained about her. Notably, Miller did not include Joleen on the email. Having been unfairly blamed, Ms. Carr responded immediately asking Miller if the customer had specifically complained about "the Black girl" because Ms. Carr was the only Black person and had almost no interaction with the customer.

20. Ms. Carr also pushed back against Miller by saying that she would direct any future complaints directly to Jodi Clark – the Director of Operations and Miller's boss. After the customer complaint incident, Miller's conduct and demeanor towards Ms. Carr became significantly more hostile.

4

21.     Around December 28, 2022, after the holidays, Ms. Carr was at work taking a test to become certified in fitting specialized shoes for people with diabetes. Miller went out of her way to hover over Ms. Carr telling her to hurry up and asking when she would be done – all in an effort to make it more difficult for Ms. Carr to complete the test successfully.

22.     Frustrated with months of harassment, discrimination, and retaliation, Ms. Carr told Miller, in words or substance, to please leave her alone so she could finish the test. Miller exploded in anger and told Ms. Carr that she would take Ms. Carr's pay if she ever talked back like that again.

23.     On January 3, 2023, Miller called Ms. Carr into a meeting with Jodi Clark and summarily terminated her employment stating only that "you aren't a good fit" before having Ms. Carr escorted out of the building.

24.     Ms. Carr claims that Walnut Medical Services's actions as alleged in this Charge created an unlawful hostile work environment based on Ms. Carr's, race, color, and/or protected activity.

25.     Ms. Carr claims that the unlawful hostile work environment culminated in the termination of her employment on January 3, 2023.

26.     As a direct and proximate result of Defendant's conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**SECTION 1981**

27. Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

28. Section 1981 of the Civil Rights Act prohibits discrimination on the basis of race in the making of contracts, including employment contracts.

29. The Defendant's conduct in terminating Plaintiff's employment was based on her race.

30. The Defendant's conduct in terminating Plaintiff's employment would have been different "but for" Plaintiff's race.

31. Pursuant to the Section 1981 of the Civil Rights Act, Plaintiff demands attorney's fees and court costs.

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**RACE DISCRIMINATION**
**(42 U.S.C.A. § 2000e-2(a))**

32. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

33. Defendant took adverse action against Ms. Carr by discriminating against her as set forth above and by terminating her employment.

34. Ms. Carr's status as an African American places her in a protected class.

35. Ms. Carr's membership in a protected class was a motivating factor in Defendant's decision to discriminate against Ms. Carr and terminate her employment.

36. As such, Defendant's decision to discriminate against Ms. Carr and terminate her employment is an unlawful employment practice, under 42. U.S.C. § 2000e-2(a).

37. As a proximate result of Defendant's conduct, Ms. Carr sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Ms. Carr has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

38. As a result of the conduct of Defendant's owners/management, Ms. Carr hereby demands punitive damages.

39. Pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq., Ms. Carr demands attorneys' fees and court costs.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## HOSTILE WORK ENVIRONMENT
## (42 U.S.C.A. § 2000e-3(a))

40. Plaintiff incorporate the preceding paragraphs as if fully set forth at length herein.

41. At all times material hereto, and pursuant to 42. U.S.C. § 2000e-2(a)., an employer may not discriminate against an employee based on her religion, ethnicity, race, or national origin.

42. Plaintiff is a qualified employee and person within the definition of 42. U.S.C. § 2000e-2(a)., et seq,.

43. Defendants are "employers" and thereby subject to the strictures of the 42. U.S.C. § 2000e-2(a)., et seq,.

44. As described above, Plaintiff, in the course and scope of her employment, was subjected to a harassing and hostile work environment.

45. Defendants failed to remedy the harassment despite actual or constructive knowledge.

46. Defendants' conduct constitutes a violation of the 42. U.S.C. § 2000e-2(a)., et seq.

47. Defendant is the owner of Defendant's establishment and Plaintiff's place of employment and is therefore liable in damages to Plaintiff for hostile work environment.

48. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as personal injury, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

49. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

50. Pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq., Ms. Henry demands attorneys' fees and court costs.

## COUNT IV
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## RETALIATION
## (42 U.S.C.A. § 2000e-3(a))

51. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8

52. As set forth above, Ms. Carr made complaints to a manager, Miller about disparate treatment in the workplace and as such, Ms. Carr was engaged in protected activity under Title VII of the Civil Rights Act.

53. Defendant took adverse action against Ms. Carr by discriminating against her and eventually terminating her employment.

54. As set forth above, Ms. Carr's participation in protected activity was a motivating factor in Defendant's decision to terminate her employment.

55. As such, Defendant's decision to terminate her employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

56. As a proximate result of Defendant's conduct, Ms. Carr sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Ms. Carr has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

57. As a result of the conduct of Defendant, Ms. Carr hereby demands punitive damages.

58. Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), et seq., Ms. Carr demands attorneys' fees and court costs.

**COUNT V**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**
**HOSTILE WORK ENVIRONMENT**
**(P.S. §951, et sec)**

59. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

60. At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,, an employer may not discriminate against an employee based on her gender.

61. Ms. Carr is a qualified employee and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

62. Defendants are "employers" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

63. As described above, Plaintiff, in the course and scope of her employment, was subjected to a harassing and hostile work environment.

64. Defendants failed to remedy the harassment despite actual or constructive knowledge

65. Defendants' conduct constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

66. Defendant is the owner of Defendant's establishment and Plaintiff's place of employment and is therefore liable in damages to Plaintiff for racial harassment.

67. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as personal injury, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore

68.     As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

69.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. Plaintiff demands attorney's fees and court costs.

## COUNT VI
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## RETALIATION

70.     Plaintiff incorporates all the preceding paragraphs as if they were set forth at length herein.

71.     Based on the foregoing, Plaintiff alleges that Defendant violated the Pennsylvania Human Relations Act ("PHRA") by subjecting her to discrimination on the basis of her race.

72.     Plaintiff further alleges that Defendant violated the PHRA by retaliating against Plaintiff for her making complaints of harassment and race-based discrimination.

73.     Defendant's conduct caused Plaintiff to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

74.     As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

75.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. Plaintiff demands attorneys' fees and court costs.

**WHEREFORE,** Plaintiff, Melinda Carr, demands judgment in her favor and against Defendant, J.J. Haines & Company, Inc., in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys' fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

                                          **LAW OFFICES OF ERIC A. SHORE, P.C.**

                              BY:    <u>/s/ Briana Lynn Pearson, Esquire</u>
                                          BRIANA LYNN PEARSON, ESQUIRE
                                          (P.A. ID 327007)
                                          Two Penn Center, Suite 1240
                                          1500 John F. Kennedy Boulevard
                                          Philadelphia, PA 19102
                                          Telephone: 215-944-6113
                                          Telefax: 215-627-9426
                                          Email: brianap@ericshore.com
                                          *Attorney for Plaintiff, Melinda Carr*

Date: <u>December 14, 2023</u>